**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**CAROL MOORE,**

      **Plaintiff,**

**v.**                                        **Case No.  8:04-cv-668-T-TBM**

**JO ANNE B. BARNHART,**
**Commissioner of the United States**
**Social Security Administration,**

      **Defendant.**

_____/

**O R D E R**

The Plaintiff seeks judicial review of the denial of her claim for Supplemental Security Income payments.  For the reasons set out herein, the decision is reversed and remanded.

I.

Plaintiff was forty-five years of age at the time of her administrative hearing.  She stands 5', 4" tall and then weighed approximately 224 pounds.  Plaintiff has a ninth grade education and certification as a nurse's aide.  She has no vocationally relevant past work experience.  Plaintiff applied for Supplemental Security Income payments in May 2001, alleging disability as of February 15, 2000, by reason of diabetes with neuropathy, a thyroid disorder, high blood pressure, heart problems, vision problems and glaucoma, depression, and obesity.  The Plaintiff's application was denied originally and on reconsideration.

The Plaintiff then received a *de novo* hearing before an Administrative Law Judge (hereinafter "ALJ").  In essence, Plaintiff claimed that she could no longer work at any job because of her diabetes, constant pain in both feet, an inability to stand, and pain in her hands and legs.  She takes an oral medication, Glucovance, to control her blood sugar, but she cannot take extra medicine when her blood sugar is too high, and she has not taken insulin.  She eats during the day to maintain her blood sugar level.  Plaintiff said that her blood sugar fluctuates between 131 or 132 on a good day and between 350 or 352 on a bad day.  She estimated that she her blood sugar is 300 or more about four days out of the week.

Plaintiff walks with a prescribed cane.  According to Plaintiff, she could walk for less than half a block because of the pain and loss of balance resulting from the pain.  Plaintiff estimated that she could stand for only a couple of minutes and sit for about fifteen minutes.  She finds it necessary to lie down for about three to four hours a day.  Even then, she finds it difficult to find a comfortable position and be still because of the pain in her feet and legs.  Plaintiff also testified that the diabetes has affected her vision.  She wears glasses, but she broke them and had an appointment with the eye doctor to address her blurred vision.  Additionally, Plaintiff stated that she suffers pain in her hands and is unable to use them most of the time; she cannot hold glasses because of poor grip and numbness.  She stated further that she does not wash the dishes, cook, or do other household chores because of her hands.

Plaintiff also testified that she is unable to work because she is afraid about her heart.  She takes nitroglycerine about four days out of the week, sometimes twice a day, for angina.  She also takes Atenolol for her blood pressure and chest pain.  According to Plaintiff, she can tell when her blood pressure is high because she experiences headaches.  Plaintiff also suffers

from depression, for which she takes Prozac.  She stated that the medication calms her, but the pain is still there.  Plaintiff indicated that she is still very depressed, she does not associate with her daughter, and she sits around and cries.  Plaintiff has seen a psychiatrist about four times.

Plaintiff is separated from her husband and lives in an apartment with her twenty-three year-old daughter.  Plaintiff is able to read and perform simple arithmetic.  On a typical day, Plaintiff gets up in the morning, bathes, returns to the couch, and watches television or reads two or three pages from her Bible.  Sometimes she has breakfast if her daughter fixes it for her.  She worked as a nurse's aide assisting with the personal care of nursing home patients, as a crossing guard, and as a skills instructor for individuals born with developmental problems.  These past jobs required standing, walking, and lifting.  See Plaintiff's testimony (R. 377-97).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed herein as necessary.

By his decision of September 15, 2003, the ALJ found that while Plaintiff has severe impairments related to carpal tunnel syndrome, diabetes mellitus with diabetic peripheral neuropathy, hypertension, obesity, and depression, she nonetheless had the residual functional capacity to perform light work.[1]  Upon this finding and application of the Medical Vocational Guidelines (hereinafter "the grids"), the ALJ concluded that Plaintiff could perform jobs

---

[1]The ALJ also found that Plaintiff had a moderate limitation in her ability to concentrate and occasional limitations in climbing, balancing, stooping, kneeling, crouching, and crawling.  (R. 15).

available to her in the local and national economy.  Upon this conclusion, the Plaintiff was

determined to be not disabled.  (R. 7- 16).  The Appeals Council denied Plaintiff's request for

review, and the ALJ's decision became the final decision of the Commissioner.


## II.

In order to be entitled to Supplemental Security Income payments, a claimant must

be unable "to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which . . . has lasted or can be expected to last

for a continuous period of not less than 12 months. . . ."  42 U.S.C. § 423(d)(1)(A).  A

"physical or mental impairment," under the terms of the Act, is one that "results from

anatomical, physiological, or psychological abnormalities which are demonstrable by

medically acceptable clinical and laboratory diagnostic techniques."  Id. at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld

if it is supported by substantial evidence and comports with applicable legal standards.  See

id. at § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971)

(quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Miles v. Chater, 84 F.3d

1397, 1400 (11th Cir. 1996).  The Commissioner must apply the correct law and demonstrate

that she has done so.  While the court reviews the Commissioner's decision with deference to

the factual findings, no such deference is given to the legal conclusions.  Keeton v. Dep't of

Health & Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994) (citing Cornelius v. Sullivan,

936 F.2d 1143, 1145 (11th Cir. 1991)).

4

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. Miles, 84 F.3d at 1400; Bloodsworth v. Heckler, 703 F.2d 1233 (11th Cir. 1983).

The ALJ, in part, decided the Plaintiff's claim pursuant to Regulations designed to incorporate vocational factors into the consideration of disability claims. See 20 C.F.R. §§ 404.1501, et seq. These Regulations apply in cases where an individual's medical condition is severe enough to prevent them from returning to their former employment, but may not be severe enough to prevent them from engaging in other substantial gainful activity. In such cases, the Regulations direct that an individual's residual functional capacity, age, education, and work experience be considered in determining whether the claimant is disabled. These factors are codified in tables of rules that are appended to the Regulations and are commonly referred to as "the grids." Id. at Part 404, Subpart P, Appendix 2. If an individual's situation coincides with the criteria listed in a rule, that rule directs a conclusion as to whether the individual is disabled. Id. at § 404.1569. If an individual's situation varies

from the criteria listed in a rule, the rule is not conclusive as to an individual's disability, but is advisory only.  Id. at § 404.1569a.

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied.  McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983).

III.

The Plaintiff raises two claims on this appeal.  As stated by the Plaintiff, they are as follows:

(1)  The Commissioner erred in her reliance upon the Medical-Vocational Guidelines, inasmuch as there are severe nonexertional impairments which significantly affect the Plaintiff's ability to perform a full range of work activities at any and all exertional levels; and

(2)  The Commissioner erred in failing to fully and adequately evaluate the Plaintiff's pain complaints, as well as her overall credibility.

By her first claim, Plaintiff argues that the ALJ erred by relying exclusively on the grids in finding her not disabled.  In support thereof, Plaintiff claims that her nonexertional impairment (depression) prohibited reliance on the grids, as did her postural limitations which demonstrated her inability to perform unlimited work at any exertional level.  Under these circumstances, Plaintiff contends that vocational expert testimony was required.

This case presents the recurring issue of whether the ALJ may rely exclusively on the grids for decision, or whether a vocational expert is required.  As noted recently by the Eleventh Circuit, "[t]he general rule is that after determining the claimant's [residual functional capacity] and ability or inability to return to past relevant work, the ALJ may use the grids to determine whether other jobs exist in the national economy that a claimant is able to perform."  Phillips v. Barnhart, 357 F.3d 1232, 1242 (11th Cir. 2004).  However, it is well established that it is *inappropriate* for the ALJ to rely exclusively on the grids if the claimant is unable to perform a full range or unlimited types of work given the claimant's exertional limitations and/or if the claimant has non-exertional impairments that significantly limit the claimant's ability to perform basic work skills.  Id.; Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995); Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992); Allen v. Sullivan, 880 F.2d 1200, 1202 (11th Cir. 1989); Francis v. Heckler, 749 F.2d 1562, 1566 (11th Cir. 1985).  The decision in Foote offers further guidance on this matter:

> Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do. . . .  The Secretary bears the burden of establishing that Appellant, who could not perform her past work, could perform alternative work in the national economy.  Although this burden can sometimes be met through straightforward application of the Medical-Vocational Guidelines (the "grids"), the regulations regarding the implementation of the grids caution that they are only applicable under certain conditions.  For example, the claimant must suffer primarily from an exertional impairment, without significant non-exertional factors . . .  Exclusive reliance on the grids is appropriate in cases involving only exertional impairments (impairments which place limits on an individual's ability to meet job strength requirements). . . .  Pain is a nonexertional impairment. . . .  Exclusive reliance on the grids is inappropriate when a claimant has a nonexertional impairment that significantly limits the claimant's basic work activities. . . . If the grids are inapplicable, the Secretary must seek expert vocational testimony.

Id. at 1559 (citations omitted).

Thus, as indicated above, nonexertional limitations cause the grids to be inapplicable only when they are severe enough to prevent a wide range of gainful employment at a given exertional level.  Id.; see also Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir. 1985).  Where an ALJ makes a specific finding that a claimant's nonexertional limitations do not preclude a wide range of employment at the given exertional level, that finding is reviewed only to determine whether it is supported by substantial evidence.  Sryock, 764 F.2d at 836.  To this end, the Eleventh Circuit has held that, "[a]n ALJ's conclusion that a claimant's limitations do no significantly compromise [her] basic work skills or are not severe enough to preclude [her] from performing a wide range of light work is not supported by substantial evidence unless there is testimony from a vocational expert."  Marbury, 957 F.2d at 839 (citing Allen, 880 F.2d at 1202).

Upon careful consideration and in light of the above authority, I am constrained to conclude that the ALJ erred by relying exclusively on the grids.[2]  Here, the ALJ found that the Plaintiff's carpal tunnel syndrome, diabetes mellitus with diabetic peripheral neuropathy, hypertension, obesity, and depression limited her to light exertional work that did not require more than occasional climbing, balancing, stooping, kneeling, crouching, and crawling and accommodated a moderate limitation in the ability to concentrate.  (R. 15).  While recognizing that the grids are used as a framework for decision when a claimant is unable to

_____

[2]To the extent that the Commissioner contends that the ALJ utilized the grids only as a *framework* for his decision, the record clearly reflects otherwise.  See (R 14).

perform all of the exertional demands of work at a given level of exertion and/or has any

nonexertional limitations, the ALJ concluded that

> [a]lthough the claimant's additional limitations preclude performance of the
> full range of light work, the additional limitations do not significantly erode
> the occupational base of jobs at that level, and there remain a significant
> number of jobs that the claimant can perform.  Because the claimant's [sic]
> has the exertional capacity to perform substantially all of the requirements
> of light work, and considering the claimant's age, education, and work
> experience, a finding of "not disabled" is supported by application of
> Medical-Vocational Rule 202.20.

(R. 14).  Thus, while the ALJ made an explicit finding that Plaintiff's [nonexertional]

impairments did not significantly erode her occupational base, his finding is not supported by

substantial evidence in the absence of vocational expert testimony.  See Marbury, 957 F.2d at

839; Allen, 880 F.2d at 1202.  Notably, the Commissioner does not address the holdings in

those cases, but rather cites to Social Security Rulings 83-14 and 96-9p in support of her

contention that Plaintiff's nonexertional impairments do not significantly erode the light work

that Plaintiff could perform.  While those rulings support the Commissioner's argument in

part, they do not adequately address the extent to which a limited ability to balance or a

moderate concentration deficit would affect or reduce the occupational base of light work; nor

do they address the Eleventh Circuit authority to the contrary.  See generally SSR 96-9p, 1996

WL 374185 (S.S.A.); SSR 83-14, 1983 WL 31254 (S.S.A).  To this end, it is worth noting

that SSR 83-14 specifically cautions an ALJ to obtain a vocational expert where

nonexertional limitations or restrictions within the light work category are between the

examples provided in the ruling.  Under these circumstances, the ALJ was required to obtain

vocational expert testimony, and remand for further consideration on this ground is warranted.[3]

Within this section of her memorandum, Plaintiff also complains generally that the reasons the ALJ gave for discounting certain medical opinions regarding her mental and physical restrictions were insufficient.  Contrary to Plaintiff's assertion, the record supports the ALJ's determination that she experienced only a moderate limitation in her ability to concentrate, and the opinions to which Plaintiff cites in opposition do not contradict the ALJ's determination.[4]  As the Commissioner notes, diagnoses and symptoms do not equate with restrictions on a claimant's mental residual functional capacity.  On the other hand, Plaintiff's contention regarding her physical limitations related to diabetic neuropathy is more persuasive.  It appears undisputed that Plaintiff suffers from diabetic neuropathy and experiences decreased sensation in her feet and/or legs.  See, e.g., (R. 201-03, 205-06, 210, 212, 215-16, 284-86, 288, 330, 365, 367).  Additionally, Dr. Robin R. Hughes, who examined Plaintiff upon request of the Division of Disability Determinations and appears the only

---

[3]A number of other decisions in this circuit have also determined the need to call a vocational expert in lieu of exclusive reliance on the grids.  See Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (pain and dizziness); Welch v. Bowen, 854 F.2d 436, 439 (11th Cir. 1988) (limitation on climbing, balancing, working at heights or around dangerous machinery); McRoberts, 841 F.2d at 1081 (limitation on sitting and standing); Walker v. Bowen, 826 F.2d 996, 1003 (11th Cir. 1987) (postural and manipulative limitations); Patterson v. Bowen, 799 F.2d 1455, 1459 (11th Cir. 1986) (limited grip strength and dexterity); Gibson v. Heckler, 762 F.2d 1516, 1521 (11th Cir. 1985) (limitation on sitting and standing).

[4]The ALJ relied on the opinion of a non-examining psychologist in determining that Plaintiff had a moderate limitation in her ability to concentrate.  (R. 10, 13).  Given that no treating or examining source identified any specific mental limitations, the ALJ's reliance on the state agency psychologist's opinion is appropriate.

examining doctor to comment on the import of the condition to Plaintiff's functional capacity, opined that Plaintiff had "no ability for prolonged standing, walking or running secondary to diabetic neuropathy of lower extremities;" could sit, stand, or walk for "less than 30 minutes without change;" was unable to kneel or stoop repetitively; was limited to lifting or carrying only ten pounds; and "had no ability for repetitive fine manipulation of the hands secondary to numbness associated with neuropathy." (R. 215-16). Such limitations have obvious significance to Plaintiff's vocational abilities. The ALJ, however, accorded "little weight" to this opinion, finding that it was contrary to other medical findings related to Plaintiff's strength, gait, grip strength and fine manipulation skills.[5] Instead, the ALJ adopted the opinion of Dr. Ronald S. Kline, a nonexamining state agency physician.[6] (R. 13). On remand, the ALJ should revisit his assessment of the functional import of Plaintiff's diabetic neuropathy. In doing so, the ALJ is reminded that in this circuit, the reports of reviewing, nonexamining doctors do not constitute substantial evidence on which to base an

---

[5]In support of the conclusion that Dr. Hughes' opinion is inconsistent with other records, the ALJ cites to the records from Dr. Gerald L. Consentino and Dr. Leo A. Perez, Dr. Hughes' own records, and the report of an examination by Dr. Denise K. Griffin. While *some* of these reports confirm the ALJ's statement regarding strength, gait and grip strength, all the reports confirm Plaintiff's diabetic neuropathy. Additionally, the neurologic examination by Dr. Griffin finds objective evidence of moderately severe bilateral carpal tunnel syndrome. Significantly, no doctor except Dr. Hughes rendered an opinion on the functional import of Plaintiff's diabetic neuropathy or carpal tunnel condition, and the ALJ had no basis in the medical record to take a contrary position to the one taken by Dr. Hughes.

[6]While the ALJ assumed that Dr. Kline had reviewed the majority of the available records before rendering an opinion on Plaintiff's functional capacity, it is not clear that Dr. Kline had the benefit of Dr. Hughes' report. See (R. 361).

administrative decision, and, that such opinions, when contrary to those of examining doctors, are entitled to little weight.  See Lamb v. Bowen, 847 F.2d 698, 703 (11th Cir. 1988)

It is unnecessary to address Plaintiff's second claim at length.  On remand, the ALJ is again obliged to address Plaintiff's subjective complaints under this circuit's "pain standard."  While the ALJ expressly referenced this standard, it is questionable whether it was appropriately applied in light of his consideration of Plaintiff's complaints related to her diabetic neuropathy, i.e., her allegations regarding her ability to stand, walk, and sit and her need to lie down throughout the day, as well as her complaints related to carpal tunnel syndrome.  Here, the ALJ discounted Plaintiff's testimony that she could not stand or walk for prolonged periods due to pain, numbness and weakness in her legs.  Although the ALJ found that Plaintiff's neuropathy in the lower extremities was demonstrated in the medical evidence, he discounted her allegations of a limited ability to stand and walk on the basis that the strength in her legs was not diminished, she had a normal gait and required no assistive device, and could get off of the examination table without difficulty.  (R. 12).  Those factors, however, do not necessarily demonstrate that Plaintiff's allegations are not credible because it is not clear whether they are inconsistent with the inability to stand for prolonged periods.  Rather, that conclusion appears to require a medical judgment of which the ALJ is not qualified to render.[7]  Moreover, the ALJ's reconsideration of Dr. Hughes' opinion may impact

---

[7]The same may be said for the ALJ's consideration of Plaintiff's subjective allegations related to carpal tunnel syndrome.  Interestingly, while the ALJ determined that such constituted a "severe" impairment, he attributed no limitations to Plaintiff's alleged pain and numbness in her hands.  Rather, while conceding that nerve conduction studies were suggestive of carpal tunnel syndrom and Plaintiff had positive Tinel's signs bilaterally, the ALJ discounted Plaintiff's allegations of hand numbness and poor grip on the basis that

his reassessment of Plaintiff's subjective allegations.[8]  Thus, on remand the ALJ should

address these subjective complaints with greater specificity and refrain from interjecting his

own medical judgment.


IV.

For the foregoing reasons, the decision of the Commissioner of the United States

Social Security Administration is not supported by substantial evidence or is not in

accordance with the correct legal standards.  The decision is reversed and remanded for

further proceedings before the Commissioner consistent with this Order.  Accordingly, the

Clerk is directed to enter Judgment in favor of the Plaintiff and to close the file, and the

matter of fees and costs shall be addressed upon further pleadings.

**Done and Ordered** at Tampa, Florida, this 20th day of July 2005.


THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE


Copies furnished to:
Counsel of Record

---

sensation in both hands was normal and strength was only reduced slightly in the right hand.
(R. 12).

[8]The ALJ also appears to have ignored reports by one treating doctor recommending
ice therapy and directing Plaintiff to put ice on her feet several times a day.  (R. 205-06, 210).